UNITED STATES of America,

v.

Raul RENDON–RODRIGUEZ.

No. CRIM. L–01–754.

United States District Court,
S.D. Texas,
Laredo Division.

Jan. 30, 2002.

Raul Rendon–Rodriguez, pro se.

Federal Public Defender, Laredo, TX, for Raul Rendon–Rodriguez.

Pretrial Services—LA, U.S. Probation, Laredo, TX, Financial Litigation, U.S. Attorney's Office, Southern District of Texas, Houston, TX, James Mack Noble, IV, U.S. Attorney's Office, Laredo, TX, for U.S.

## MEMORANDUM AND ORDER

KAZEN, Chief Judge.

On August 10, 2001, Defendant pled guilty to violating 8 U.S.C. §§ 1326(a) and (b)(2). Defendant was scheduled to be sentenced on November 16, 2001. However, the Court continued the proceeding for sixty (60) days to allow Defendant to research whether the Supreme Court's decision in *INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), might have an effect on his case. (Docket No. 10). On January 17, 2002, Defendant filed a Motion to Withdraw Plea of Guilty and Motion to Dismiss the Indictment. (Docket No. 11).

### I. Motion to Dismiss Indictment

■ Defendant argues that the Court should dismiss his indictment because his 1999 removal proceedings, upon which the present indictment is based, violated due process. (Docket No. 11). In a criminal proceeding under § 1326, an alien may not collaterally attack the validity of the underlying deportation order unless he demonstrates that "(1) [he] exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived [him] of the opportunity or judicial review; and (3) the entry of the order was fundamentally unfair." *See* 8 U.S.C.A § 1326(d) (West 1999).[1] Failure to demonstrate any one of these factors would mean that Defendant's 1999 removal order may serve as a basis for his conviction under § 1326.

---

1. These factors are a codification of the Supreme Court's decision in *United States v. Mendoza–Lopez*, 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987). *See United States v. Lopez–Vasquez*, 227 F.3d 476, 483 n. 13 (5th Cir.2000). The Fifth Circuit has articulated its own three-factor test, which is essentially identical to that contained in § 1326(d). *See id.* at 483 (stating that the alien "must establish that (1) the prior hearing was 'fundamentally unfair'; (2) the hearing effectively eliminated the right of the alien to challenge the hearing by means of judicial review of the order; and (3) the procedural deficiencies caused the alien actual prejudice."); *United States v. Benitez–Villafuerte*, 186 F.3d 651, 658 (5th Cir.1999).

*See United States v. Lopez–Vasquez,* 227 F.3d 476, 485 (5th Cir.2000). Defendant has demonstrated none of the factors.

### A. Exhaustion of Administrative Remedies

After his removal proceeding in 1999, Defendant filed a Notice of Appeal, but later withdrew it. (Docket No. 11, at 5, Exh. E). Thus, Defendant voluntarily abandoned the normal administrative appeals process. Moreover, as noted above, this Court gave Defendant sixty (60) days to take whatever steps he deemed appropriate under the *St. Cyr* decision to challenge his prior deportation order before an immigration court. Defendant now simply states that an unnamed "immigration lawyer" reports that "immigration courts are not allowing a re-opening of a prior deportation order, in cases where as here, the Defendant returns after a deportation order has been issued." He does not claim to have challenged this practice before the Board of Immigration Appeals. Indeed, he apparently did not even bother to file anything in an immigration court. This conduct does not amount to exhaustion of administrative remedies.

### B. Improper Deprivation of Judicial Review

Defendant's withdrawal of his Notice of Appeal effectively deprived Defendant of the opportunity for judicial review. However, this deprivation was not "improper," as required by the statute. Although Defendant alleges that his decision to withdraw his appeal resulted from the immigration judge's "representations that he would have no relief on appeal," the transcript of Defendant's removal proceeding contains no such representations by the judge. To the contrary, Immigration Judge John T. Zastrow informed Defendant both at the beginning and the end of the removal proceeding that Defendant had the right to appeal his order. (Docket No. 11, Exh. B, at 1, 5). Because Defendant would not answer Judge Zastrow's questions, Judge Zastrow then, in effect, entered a notice of appeal *for* him. (Docket No. 11, Exh. B, at 5).

### C. Fairness of Defendant's Removal Order

Defendant does not clearly state why he believes the issuance of his 1999 removal order was unfair. As far as the Court can decipher from his motion, Defendant complains that: 1) he was denied a continuance to obtain legal representation; 2) the immigration judge improperly represented to Defendant that he "would have no relief on appeal," causing Defendant to abandon the appeal process; and 3) the immigration judge failed to advise Defendant of his right to apply for discretionary relief from deportation.

With regard to the first complaint, Defendant was informed on numerous occasions of his right to legal representation at his hearing, and was even provided with a list of organizations and attorneys who provide free legal services. (Docket No. 11, Certificate of Service for Notice to Appear). Moreover, the record of the removal proceeding reflects that Defendant was granted a continuance to obtain legal representation, but failed to do so. (Docket No. 11, Exh. B. at 1). When Defendant made a motion for a second continuance on the day of his removal proceeding, Judge Zastrow denied it, explaining that Defendant had had sufficient time to obtain counsel. *See id.* With regard to the second complaint, as explained above, Judge Zastrow never attempted to discourage Defendant from pursuing an appeal, nor did he make any representations about the merits of an appeal.

The basis for Defendant's third complaint is that his prior robbery conviction occurred in 1992, before the repeal of former § 212(c) of the INA by the AEDPA

and IIRIRA in 1996. Defendant claims that under the reasoning of *St. Cyr*, he was entitled to apply for discretionary relief from deportation pursuant to § 212(c). By failing to advise him of that right, he argues, the immigration judge deprived him of due process. Aliens who have entered the United States illegally are entitled to due process. *See United States v. Benitez–Villafuerte*, 186 F.3d 651, 656 (5th Cir. 1999); *Nose v. Attorney General of the United States*, 993 F.2d 75, 78 (5th Cir. 1993). Due process in this context requires "only that an alien be provided notice of the charges against him, a hearing before an executive or administrative tribunal, and a fair opportunity to be heard." *Benitez–Villafuerte*, 186 F.3d at 657. The INS gave Defendant a Notice to Appear form when he was apprehended attempting to enter the United States in 1999. (Docket No. 11, unlabeled Exh.). That document explained the reasons for Defendant's ineligibility for admission to this country, and advised him that a hearing would be scheduled before an immigration judge, that he had a right to legal representation at the hearing, and that he had a right to appeal. *See id.* Defendant acknowledged receipt of this Notice to Appear by signing the certificate of service. *See id.* A hearing was held before Immigration Judge Zastrow on March 3, 1999. (Docket No. 11, Exh. B). Defendant was informed by Judge Zastrow that he had the right to present evidence on his own behalf, *see id.* at 1–2, but Defendant had no evidence to present. At the conclusion of the hearing, Judge Zastrow ordered that Defendant be removed to Mexico. *See id.* at 4. Defendant filed a Notice of Appeal, but later withdrew it. Consequently, Defendant was provided with due process and may not complain that his removal order was fundamentally unfair. While Judge Zastrow apparently did not discuss any entitlement to seek discretion-

ary relief, that advice is not a component of the due process requirement.

■ Even if Defendant's due process argument had merit, the record of Defendant's 1999 immigration proceedings demonstrates that he has waived any argument based on *St. Cyr.* In his Notice of Appeal to the Board of Immigration Appeals, Defendant argued that his case should be determined under pre-AEDPA standards because his offense was committed prior to 1996. (Docket No. 11, Exh. E). Furthermore, Defendant expressly stated that he wished to seek relief under § 212(c) of the INA. *See id.* Thus, Defendant was then aware of the potential viability of the argument he now asserts. Defendant nevertheless chose to withdraw his appeal. By failing to pursue an appeal on an argument known to him at that time, Defendant waived his right to assert that same argument now.

■ Because Defendant has failed to demonstrate any of the three statutory prerequisites to bringing a collateral attack on his 1999 removal order, he is precluded from challenging the validity of that order in his § 1326 prosecution.

## II. *Withdrawal of Guilty Plea*

■ The district court may permit a defendant to withdraw his plea of guilty before sentencing for any "fair and just reason." *See* FED. R. CRIM. P. 32(e); *United States v. Brewster*, 137 F.3d 853, 857–58 (5th Cir.1998). The burden for establishing a fair and just reason rests with the defendant. *See Brewster*, 137 F.3d at 858. Two of the factors to be considered in determining whether the defendant has made such a showing are whether he has asserted his innocence and whether the withdrawal would waste judicial resources. *See id.* at 857. Defendant seeks to withdraw his guilty plea so that he may collaterally attack the validity of his 1999 re-

moval order, and thereby invalidate the indictment in the instant case. According to Defendant, if his order of removal was improper, the indictment should be dismissed because an essential element of the crime of illegal entry after deportation has been eviscerated. This is essentially an assertion of innocence. As explained above, however, Defendant has failed to demonstrate that he is entitled to collaterally attack his 1999 removal order. Even if he were, he waived his *St. Cyr* argument by failing to pursue it on appeal. He also made no effort to re-open his case after being given time to do so. Defendant offers no other justification for withdrawal of his guilty plea. Thus, allowing him to withdraw his plea and pursue his current arguments would waste judicial resources.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Withdraw Plea of Guilty and Motion to Dismiss Indictment are **DE-NIED.**